IN THE UNITED STATES DISTRICT COURT
FOR THE
MIDDLE DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| BRAHEEM GRANT, | : |
| Plaintiff | : |
| v. | : CIVIL NO. 3:CV-13-2371 |
| DAVID VARANO, ET AL., | : (Judge Conaboy) |
| Defendants | : |

FILED
SCRANTON
SEP 15 2014
PER ⟋ℛ
DEPUTY CLERK

## MEMORANDUM
### Background

Braheem Grant, an inmate presently confined at the State Correctional Institution, Coal Township, Pennsylvania (SCI-Coal Twp.), initiated this pro se civil rights action. Service of the Complaint was previously ordered.

Named as Defendants are the following SCI-Coal Twp. Officials: Superintendent David Varano; Captain L. Morris; Lieutenant C. Symons; Correctional Officers (CO) W. Lynn and T. Kinney; as well as Hearing Examiner L. S. Kerns-Barr. Plaintiff states that on July 21, 2011 after he being escorted back to his Restricted Housing Unit (RHU) cell from the SCI-Coal Twp. mini-law library he was subjected to a strip search by CO Lynn. During this search, Lynn allegedly referred to the prisoner by his real name thereby jeopardizing Grant's safety and ignored Plaintiff's request to refrain from calling him by his actual name.

Following the search, Plaintiff contends that he was denied his dinner tray because he had been falsely accused of verbal

1

abuse.[1] As a result of those events, Grant filed an institutional grievance. In retaliation for doing so, Grant was purportedly issued a false disciplinary charge by Lynn charging the inmate with threatening an employee with bodily harm and use of abusive or obscene language to an employee.

It is next alleged that the following day Lynn taunted Plaintiff and placed him on restricted movement. This designation which precluded Grant from showering, shaving, recreation, and movement outside of his cell. See Doc. 1, ¶ 16. Later that same day, Lynn allegedly subjected Grant to further verbal threats. Grant responded by initiating a second grievance.

On July 26, 2011, Plaintiff had a teleconference regarding the misconduct charge before Defendant Kerns-Barr. Grant states that Kerns-Barr denied his requests for a staff representative, witnesses, and review of video footage. Plaintiff again appeared before the Hearing Examiner on August 2, 2011 and was informed that there was either no video footage or that any footage that was available was inconclusive. See id. at ¶ 20. However, because of deficiencies with the misconduct charge which were pointed out by the Plaintiff, the misconduct charge was dismissed without prejudice by the Hearing Examiner.

Later that same day, Defendants Lynn and Symons allegedly tried to coerce Plaintiff into withdrawing his two grievances in exchange for the misconduct not being rewritten and for the return

---

1. Deprivation of a single meal is simply not of such magnitude as to rise to the level of an Eighth Amendment violation. See Robles v. Coughlin, 725 F.2d 12, 15 (2nd Cir. 1983)(only a substantial deprivation of food to a prisoner sets forth a viable Eighth Amendment claim)

of magazines to the inmate. Symons' coercion effort included the use of a racial slur. Grant indicates that he initiated another grievance regarding those attempts. Three days later, Lynn again tried unsuccessfully to get Plaintiff to withdraw the grievances. Shortly thereafter, Grant refused to exit his cell after being told that Lieutenant Symons wanted to see him. See id. at ¶ 34. Plaintiff then received a written denial of his grievance and Lynn's rewritten misconduct charge.

On August 9, 2011, Grant had a hearing before Kerns-Barr on the rewritten misconduct charge. The Plaintiff's request for witnesses was denied, he was found guilty of the charge and was sanctioned to a ninety (90) day term of disciplinary custody.

The Complaint's final contention is that Defendant Kinney gave Grant a dinner tray on September 15, 2011 which contained a metal object (razor blade) which caused lacerations to Plaintiff's mouth. It is also alleged that there was a post-incident delay in medical treatment for Grant's injury. The Complaint seeks injunctive and declaratory relief as well as punitive and compensatory damages.

Defendants have responded to the Complaint by filing a motion to dismiss. See Doc. 16. The opposed motion is ripe for consideration.

## Discussion

Defendants claim entitlement to entry of dismissal on the grounds that: (1) Plaintiff's claims against Defendants in their official capacities are barred by the Eleventh Amendment; (2) a portion of the Complaint is barred by the statute of limitations;

(3) the allegations of verbal harassment are insufficient; (4) Plaintiff has not adequately alleged personal involvement by the Defendants Varano and Morris; (5) any claims relating to Grant's disciplinary placement and misconduct proceedings cannot proceed; and (6) the Complaint fails to adequately allege personal involvement by any Defendant with respect to the food tampering claim.

**Standard of Review**

Federal Rule of Civil Procedure 12(b)(6) provides for the dismissal of complaints that fail to state a claim upon which relief can be granted. When ruling on a motion to dismiss under Rule 12(b)(6), the court must "accept as true all factual allegations in the complaint and all reasonable inferences that can be drawn therefrom, and view them in the light most favorable to the plaintiff." Kanter v. Barella, 489 F.3d 170, 177 (3d Cir. 2007)(quoting Evancho v. Fisher, 423 F.3d 347, 350 (3d Cir. 2005)). A plaintiff must present facts that, if true, demonstrate a plausible right to relief. See Fed. R. Civ. P. 8(a)(stating that the complaint should include "a short and plain statement of the claim showing that the pleader is entitled to relief"); Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007). This requirement "calls for enough facts to raise a reasonable expectation that discovery will reveal evidence of" the necessary elements of the plaintiff's cause of action. Id. at 556.

A complaint must contain "more than an unadorned, the-defendant-unlawfully-harmed-me accusation." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009). "Threadbare recitals of the elements of a

4

cause of action, supported by mere conclusory statements do not suffice." Iqbal, 556 U.S. at 678. Legal conclusions must be supported by factual allegations and the complaint must state a plausible claim for relief. See id. at 679.

"Factual allegations must be enough to raise a right to relief above the speculative level, on the assumption that all the allegations in the complaint are true (even if doubtful in fact)." Twombly, at 555. The reviewing court must determine whether the complaint "contain[s] either direct or inferential allegations respecting all the material elements necessary to sustain recovery under some viable legal theory." Id. at 562; see also Phillips v. County of Allegheny, 515 F.3d 224, 234 (3d Cir. 2008)(in order to survive a motion to dismiss, a plaintiff must allege in his complaint "enough facts to raise a reasonable expectation that discovery will reveal evidence of the necessary element[s]" of a particular cause of action). Additionally, pro se pleadings are to be construed liberally, Haines v. Kerner, 404 U.S. 519, 520 (1972).

**Eleventh Amendment**

Defendants argue that any claim for money damages against them in their respective official capacities are barred by the Eleventh Amendment. See Doc. 22, p. 15.

The United States Supreme Court has ruled that a § 1983 action brought against a "State and its Board of Corrections is barred by the Eleventh Amendment unless [the State] has consented to the filing of such a suit." Alabama v. Pugh, 438 U.S. 781, 782 (1978). The Court of Appeals for the Third Circuit has similarly concluded that the Pennsylvania Board of Probation and Parole could

not be sued because "it is not a 'person' within the meaning of Section 1983." Thompson v. Burke, 556 F.2d 231, 232 (3d Cir. 1977).

In Will v. Michigan Dep't of State Police, 491 U.S. 58 (1989), the Supreme Court reiterated its position that state agencies are not "persons" subject to liability in § 1983 actions brought in federal court. The Court noted that a § 1983 suit against a state official's office was "no different from a suit against the State itself." Id. at 71. "Will establishes that the State and arms of the State, which have traditionally enjoyed Eleventh Amendment immunity, are not subject to suit under § 1983 in either federal or state court." Howlett v. Rose, 496 U.S. 356, 365 (1990); Walker v. Beard, 244 Fed. Appx. 439, 440 (3d Cir. 2007); see also A.W. v. Jersey City Public Schools, 341 F.3d 234, 238 (3d Cir. 2003).

Likewise, suits brought against state officials acting in their official capacities are to be treated as suits against the employing government agency. Will, 491 U.S. at 70-71; Garden State Elec. Inspection Serv. v. Levin, 144 Fed. Appx. 247, 251 (3d Cir. 2005). As such, Grant's damage claims brought against Defendants in their official capacities are considered to be against the state itself and are barred by the Eleventh Amendment.[2]

**Statute of Limitations**

Defendants next argue that ¶¶ 10-47 of the Complaint regards events which transpired between July 21, 2011 and August 26, 2011

---

2. To the extent that Plaintiff is seeking injunctive relief against the Defendants in their official capacities, such requests are not barred by the Eleventh Amendment. See Pennsylvania Federation of Sportsmen's Clubs, Inc. v. Hess, 297 F.3d 310, 323 (3d Cir. 2002).

6

which is more than two (2) years prior to the filing of this action and as such those claims are time barred. See Doc. 22, p. 6.

In reviewing the applicability of the statute of limitations to a civil rights action, a federal court must apply the appropriate state statute of limitations which governs personal injury actions. Wilson v. Garcia, 471 U.S. 261, 276 (1985); Urrutia v. Harrisburg County Police Dep't, 91 F.3d 451, 457 n.9, 25 (3d Cir. 1996). The United States Supreme Court clarified its decision in Wilson when it held that courts considering civil rights claims should borrow the general or residual [state] statute for personal injury actions. Owens v. Okure, 488 U.S. 235, 250 (1989); Little v. Lycoming County, 912 F.Supp. 809, 814 (M.D. Pa. 1996). It has also been held that "state statutes of limitations should be borrowed for suits under Bivens." Roman v. Townsend, 48 F. Supp.2d 100, 104 (D. Puerto Rico 1999).

Pennsylvania's applicable personal injury statute of limitations is two years. See 42 Pa. Cons. Stat. Ann. § 5524(7) (Purdon Supp. 1996); Kost v. Kozakiewicz, 1 F.3d 176, 190 (3d Cir. 1993); Smith v. City of Pittsburgh, 764 F.2d 188, 194 (3d Cir. 1985).

The question of when a cause of action accrues is a question of federal law. Smith v. Wambaugh, 887 F. Supp. 752, 755 (M.D. Pa. 1995). A civil rights claim accrues when the facts which support the claim reasonably should have become known to the plaintiff. If a defendant's conduct is part of a continuing practice, an action is timely so long as the last act evidencing the continuing pattern falls within the limitations period. Brenner v. Local 514, 927 F. 2d 1283, 1295 (3d Cir. 1991). It is also well settled that a

person may realize he has been injured but is not adequately apprised as to the cause of his injury. See McGowan v. University of Scranton, 759 F.2d 287 (3d Cir. 1985). In Oshiver v. Levin, Fishbein, Sedran, & Berman, 38 F.3d 1380 (3d Cir. 1993), the Third Circuit Court of Appeals recognized two doctrines, equitable tolling and the discovery rule, which may extend the statute of limitations.

The statute of limitations may be subject to equitable tolling where it is shown that the plaintiff exercised reasonable diligence in bringing his claims. Campbell v. Kelly, 87 Fed. Appx. 234, 236 (3d Cir. 2003). The discovery rule is a judicially created principle which tolls the statue of limitations in cases where a reasonable person in the plaintiff's shoes lacks the critical facts to put him on notice that he needs to investigate.

However, it has been recognized that the limitations period in a civil rights action will begin to run even if the Plaintiff does not know all the facts necessary for his claim, all that is required is that the plaintiff have sufficient notice to place him on alert of the need to begin investigating. Gordon v. Lowell, 95 F. Supp.2d 264, 272 (E.D. Pa. 2000). Under Gordon a "claim accrues upon knowledge of the actual injury, not that the injury constitutes a legal wrong." Id. This Court is satisfied that Plaintiff had the necessary information to pursue his pending claims on the dates which they occurred.

Defendants correctly note that Grant's Complaint was docketed in this Court on September 13, 2013. Plaintiff counters that the Complaint was signed and delivered to prison officials

during August 2013. See Doc. 30, p. 2. He adds that his administrative remedies were not exhausted until November 29, 2011.

Under the standards announced in Houston v. Lack, 487 U.S. 266 (1988), Grant's Complaint will be deemed filed as of August 30, 2014, the date the Complaint and in forma pauperis application are dated.[3] See Doc. 1, p. 23. Although, Plaintiff's administrative relief efforts may not have concluded until November 2011 that does not warrant an extension of the statute of limitations since Plaintiff still had an abundance of time in which to timely file his claims. Furthermore, it has not been asserted, nor is it apparent to this Court that the continuing pattern exception is applicable to those allegations. Accordingly, the motion to dismiss will be granted with respect to any claims which occurred prior to August 30, 2011.

However, the allegation that Plaintiff was served a dinner tray by Defendant Kinney on September 15, 2011 which was laced with a razor blade is timely and may proceed.

**Personal Involvement/Grievance Procedure**

The next argument for dismissal contends that the Complaint fails to allege any facts showing that Superintendent Varano and Captain Morris were personally involved in any constitutional misconduct. See Doc. 22, p. 12. In a related argument, Defendants contend that Plaintiff's claims that his constitutional rights were violated because his administrative grievances were improperly denied are constitutionally insufficient. See Doc. 22, p. 11.

---

3. The Court will assume that the Complaint was given to prison personnel for the purpose of it being mailed to this Court on said date.

A plaintiff, in order to state an actionable § 1983 civil rights claim, must plead two essential elements: (1) that the conduct complained of was committed by a person acting under color of state law, and (2) that said conduct deprived the plaintiff of a right, privilege, or immunity secured by the Constitution or laws of the United States. See Groman v. Township of Manalapan, 47 F.3d 628, 638 (3d Cir. 1995); Shaw by Strain v. Strackhouse, 920 F.2d 1135, 1141-42 (3d Cir. 1990).

Furthermore, federal civil rights claims brought under § 1983 cannot be premised on a theory of respondeat superior. Rode v. Dellarciprete, 845 F.2d 1195, 1207 (3d Cir. 1988). Rather, each named defendant must be shown, via the complaint's allegations, to have been personally involved in the events or occurrences which underlie a claim. See Rizzo v. Goode, 423 U.S. 362 (1976); Hampton v. Holmesburg Prison Officials, 546 F.2d 1077 (3d Cir. 1976). As explained in Rode:

> A defendant in a civil rights action must have personal involvement in the alleged wrongs. . . . [P]ersonal involvement can be shown through allegations of personal direction or of actual knowledge and acquiescence. Allegations of participation or actual knowledge and acquiescence, however, must be made with appropriate particularity.

Rode, 845 F.2d at 1207.

Inmates also do not have a constitutional right to a prison grievance system. See Jones v. North Carolina Prisoners Labor Union, 433 U.S. 119, 137-138 (1977); Speight v. Sims, No. 08-2038, 2008 WL 2600723 at *1 (3d. Cir. Jun 30, 2008)(citing Massey v. Helman, 259 F.3d 641, 647 (7th Cir. 2001)("[T]he existence of a prison grievance procedure confers no liberty interest on a

prisoner.") Consequently, any attempt by Plaintiff to establish liability against the Warden solely based upon the substance or lack of response to his institutional grievances does not by itself support a constitutional due process claim.  See also Alexander v. Gennarini, 144 Fed. Appx. 924, 925 (3d Cir. 2005)(involvement in post-incident grievance process not a basis for § 1983 liability); Pryor-El v. Kelly, 892 F. Supp. 261, 275 (D. D.C. 1995) (because prison grievance procedure does not confer any substantive constitutional rights upon prison inmates, the prison officials' failure to comply with grievance procedure is not actionable).

A review of the Complaint shows that Plaintiff is attempting to establish liability against Defendants Varano and Morris either on the basis of their respective supervisory capacities within the prison or based upon their involvement in the handling of Plaintiff administrative grievances and appeals.  Pursuant to the above discussion, either approach is insufficient for the purpose of establishing liability under § 1983.

**Verbal Harrassment**

In addition to being time barred it is also asserted that the allegations of verbal harassment and intimidation set forth in the Complaint do not rise to constitutional violations.  See Doc. 22, p. 11.

The use of words generally cannot constitute an assault actionable under § 1983.  Johnson v. Glick, 481 F.2d 1028, 1033 n.7 (2d Cir.); Maclean v. Secor, 876 F. Supp. 695, 698-99 (E.D. Pa. 1995); Murray v. Woodburn, 809 F. Supp. 383, 384 (E.D. Pa. 1993) ("Mean harassment . . . is insufficient to state a constitutional deprivation."); Prisoners' Legal Ass'n v. Roberson, 822 F. Supp.

11

185, 189 (D.N.J. 1993) ("[V]erbal harassment does not give rise to a constitutional violation enforceable under § 1983.").

Mere threatening language and gestures of a custodial officer do not, even if true, amount to constitutional violations. Balliet v. Whitmire, 626 F. Supp. 219, 228-29 (M.D. Pa.) ("[v]erbal abuse is not a civil rights violation . . ."), aff'd, 800 F.2d 1130 (3d Cir. 1986) (Mem.). A constitutional claim based only on verbal threats will fail regardless of whether it is asserted under the Eighth Amendment's cruel and unusual punishment clause, see Prisoners' Legal Ass'n, 822 F. Supp. at 189, or under the Fifth Amendment's substantive due process clause.

Verbal harassment, with some reinforcing act accompanying them, however, may state a constitutional claim. For example, a viable claim has been found if some action taken by the defendant escalated the threat beyond mere words. See Northington v. Jackson, 973 F.2d 1518 (10th Cir. 1992) (guard put a revolver to the inmate's head and threatened to shoot); Douglas v. Marino, 684 F. Supp. 395 (D.N.J. 1988) (involving a prison employee who threatened an inmate with a knife). Moreover, alleged instances of verbal harassment which are not accompanied by any physical contact are constitutionally insufficient. See Hart v. Whalen, 2008 WL 4107651 *10 (M.D. Pa. July 29, 2008); Wright v. O'Hara, 2004 WL 1793018 *7 (E.D. Pa. 2004)(correctional officer's words and gestures, including lunging at prisoner with a clenched fist were constitutionally insufficient because there was no physical contact).

There is no indication that any of the verbal threats and racial slurs allegedly voiced against Grant were accompanied by a

12

reinforcing act involving a deadly weapon as contemplated under <u>Northington</u> and <u>Douglas</u>. More importantly, it is not alleged that the alleged verbal abuse was accompanied by any physically intrusive behavior. Given the circumstances described by Plaintiff, the purported verbal remarks attributed to the Defendants were not of such magnitude to shock the conscience as contemplated by this Court in <u>S.M. v. Lakeland School District</u>, 148 F. Supp.2d 542, 547-48 (M.D. Pa. 2001) and thus, did not rise to the level of a constitutional violation.[4]

**Misconduct Charges/Disciplinary Custody**

Defendants also assert that the claims related to Plaintiff's misconduct proceedings and resulting disciplinary custody in addition to being time barred are also constitutionally insufficient. <u>See</u> Doc. 22, p. 7.

The Fourteenth Amendment of the United States Constitution provides in pertinent part: "No State shall . . . deprive any person of life, liberty, or property, without due process of law . . . ." The Supreme Court has mandated a two-part analysis of a procedural due process claim: first, "whether the asserted individual interests are encompassed within the . . . protection of 'life, liberty or property[,]'" and second, "if protected interests are implicated, we then must decide what procedures constitute 'due process of law.'" <u>Ingraham v. Wright</u>, 430 U.S. 651, 672 (1977). If there is no protected liberty or property interest, it is

---

4. The verbal abuse attributed to Defendant Lynn on July 21, 2011 arguably set forth a failure to protect claim. However, as previously discussed said claim is precluded from consideration as it was untimely filed.

13

obviously unnecessary to analyze what procedures were followed when an alleged deprivation of an interest occurred.

Liberty interests protected by the Fourteenth Amendment may arise either from the Due Process Clause itself or from state law. Meachum v. Fano, 427 U.S. 215, 223-26 (1976). In Wolff v. McDonnell, 418 U.S. 539, 563-73 (1974), the Supreme Court held that a prisoner facing serious institutional sanctions is entitled to some procedural protection before penalties can be imposed. Wolff, 418 U.S. at 563-71. The Supreme Court set forth five requirements of due process in a prison disciplinary proceeding: (1) the right to appear before an impartial decision-making body; (2) twenty-four hour advance written notice of the charges; (3) an opportunity to call witnesses and present documentary evidence, provided the presentation of such does not threaten institutional safety or correctional goals; (4) assistance from an inmate representative, if the charged inmate is illiterate or if complex issues are involved; (5) a written decision by the fact finders as to the evidence relied upon and the rationale behind their disciplinary action. Id.

An additional procedural requirement was set forth in Superintendent, Massachusetts Correctional Inst. at Walpole v. Hill, 472 U.S. 445, 453-56 (1985). In Hill, the Supreme Court held that there must be some evidence which supports the conclusion of the disciplinary tribunal. The Third Circuit Court of Appeals, and other courts applied the Wolff principles to prison disciplinary hearings which did not result in withdrawal of good time credit but instead in disciplinary or administrative segregation. E.g., Grillo v. Coughlin, 31 F.3d 53 (2d Cir. 1994); Griffin v. Spratt,

14

969 F.2d 16 (3d Cir. 1992); Cook v. Lehman, 863 F. Supp. 207 (E.D. Pa. 1994).

However, the United States Supreme Court's subsequent decision in Sandin v. Conner, 515 U.S. 472 (1995), marked a shift in the focus of liberty interest analysis from one "based on the language of a particular regulation" to "the nature of the deprivation" experienced by the prisoner. Id. at 481. In Sandin, the Supreme Court reasoned, inter alia, that "[d]iscipline by prison officials in response to a wide range of misconduct" is expected as part of an inmate's sentence. Id. at 485. The nature of an inmate's confinement in disciplinary segregation was found similar to that of inmates in administrative segregation and protective custody at his prison. Id. at 486.

Focusing on the nature of the punishment instead of on the words of any regulation, the Supreme Court held that the procedural protections in Wolff were inapplicable because the "discipline in segregated confinement did not present the type of atypical, significant deprivation in which a state might conceivably create a liberty interest." Id. The Sandin Court relied on three factors in making this determination: (1) confinement in disciplinary segregation mirrored conditions of administrative segregation and other forms of discretionary confinement; (2) based on a comparison between inmates inside and outside segregation, the state's action in placing the inmate there did not work a major disruption in the inmate's environment; and (3) the state's action did not inevitably affect the duration of inmate's sentence.

Courts within this circuit, applying Sandin in various actions, have found no merit in procedural due process claims

15

presented regarding institutional disciplinary hearings which result in disciplinary custody placement. See Torres v. Fauver, 292 F.3d 141, 150-51 (3d Cir. 2002)(because prisoners can reasonably anticipate transfer to disciplinary custody, placement in segregation as a disciplinary sanction did not implicate a protected liberty interest); Griffin v. Vaughn, 112 F.3d 703, 706-08 (3d Cir. 1997)(no liberty interest; Smith v. Mensinger, 293 F.3d 641, 645, 654 (3d Cir. 2002)(seven (7) months of disciplinary confinement did not implicate liberty interest); Vorhauer v. Conrad, No. 3:CV-90-2196 (M.D. Pa. Jan. 29, 1997) (Vanaskie, J.) (inmate's confinement in disciplinary custody for ninety days in accordance with DOC procedures did not give rise to a protected liberty interest); Brown v. Stachelek, No. CIV. A. 95-522, 1995 WL 435316, at *3-4 (E.D. Pa. Jul. 20, 1995) (neither the Due Process Clause nor state law supported plaintiff's procedural due process claims because his punishment (at most ninety days in "close custody" and a loss of "minimum status") was not outside the scope of his sentence and did not otherwise violate the Constitution).

Plaintiff contends that he was found guilty of a falsified misconduct charge filed by Defendant Lynn, denied due process during the ensuing misconduct proceedings by Hearing Examiner Kerns-Barr, and improperly sanctioned to serve a ninety (90) day term of disciplinary custody.

Considering the rules of law set forth in Sandin and the subsequent line of decisions cited above, this Court finds that the procedural due process claims are meritless because Plaintiff has not alleged that the ninety (90) day term of disciplinary confinement which was imposed by Hearing Examiner Kerns-Barr was of

16

such magnitude as to implicate a protected liberty interest under Sandin.[5]

**Razor Blade Claim**

The remaining argument for dismissal asserts that the Complaint fails to adequately allege involvement by any Defendant with respect to the claim that a razor blade was planted in his food. See Doc. 22, p. 14. They note that there are no factual allegations set forth regarding who placed the razor blade was in the food or how it was put there. It is also alleged that there was subsequent delay in medical treatment for Grant's injury.

This Court agrees that none of the named Defendants are alleged to have any involvement in the purported delay of medical care. Accordingly, entry of dismissal with respect to those assertions that needed medical care was delayed is appropriate.

Plaintiff alleges that Defendant Kinney gave Grant a dinner tray on September 15, 2011 which contained a metal object (razor blade) which caused lacerations to Plaintiff's mouth. Kinney also told Plaintiff to enjoy his meal and flashed him a quick smile. See Doc. 1, ¶ 48. At a later point in the Complaint, Plaintiff alleges that Kinney "intentionally placed a razor blade in Plaintiff's meal tray." Id. at ¶ 72.

---

5. "When an inmate charged with misconduct has been afforded . . . procedural due process . . ., an allegation that he was falsely accused does not state a claim for a violation of his constitutional rights . . . ." Wilson v. Maben, 676 F. Supp. 581, 584 (M.D. Pa. 1987) (Nealon, J.)
   However, the filing of a false disciplinary charge in retaliation for an inmate's filing of a grievance is actionable. See Flanagan v. Shively, 783 F. Supp. 922, 931 (M.D. Pa. 1992)(McClure, J.). Since the false disciplinary misconduct claim was not timely filed, no further discussion of the claim of a falsified misconduct is warranted.

It is well settled that liberal standards are to be applied to pro se filings. This Court also agrees that there are no facts asserted which clearly show that Kinney was the individual who tampered with the Plaintiff's food tray. Nonetheless, in light of Plaintiff's pro se status, since the factual allegations set forth in the Complaint must be accepted as true, and out of an abundance of caution due to the serious nature of the alleged conduct, this Court is satisfied, at this juncture in the proceedings, that Plaintiff has adequately alleged that Defendant Kinney had personal involvement in the delivery of a tampered food tray to the prisoner. In conclusion, the motion to dismiss will be granted with exception of the food tampering claim against Defendant Kinney. An appropriate Order will enter.

_____
RICHARD P. CONABOY
United States District Judge

DATED: SEPTEMBER 15th, 2014